CHARLES R. KOZAK, ESQ.
Nevada State Bar No. 11179
KOZAK & ASSOCIATES, LLC
3100 Mill Street, Suite 115
Reno, Nevada 89502
Tel: (775) 322-1239
Fax: (775) 800-1767
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| LELAND T. FAEGRE, an individual THERESA FAEGRE, an individual, LELAND T. FAEGRE and THERESA FAEGRE, as TRUSTEES OF THE MILKY WAY INCORPORATED AND 401(K) PROFIT SHARING PLAN,<br><br>          Plaintiffs,<br><br>     vs.<br><br>CINDY ARMENTROUT, ESQ., individually and as Member of ARMENTROUT & ASSOCIATES, LTD., a Nevada professional LLC, SHERRY GALLATIN, TOM GALLATIN, individually and as members of CASEY HOLDINGS I, LLC., Nevada domestic llimited-liability company CASEY HOLDINGS I, LLC SERIES K., a Delaware limited liability company, and DOES 1 to 50,<br><br>          Defendants. | **CASE NO.:**<br><br>**COMPLAINT FOR RECISSION, DAMAGES, AND EQUITABLE RELIEF**<br><br>1. **Breach of Contract (Armentrout Defendants)**<br>2. **Breach of Contract (Gallatin Defendants)**<br>3. **Breach of Fiduciary Duty (Armentrout Defendants)**<br>4. **Breach of Fiduciary Duty (Gallatin Defendants)**<br>5. **Breach of the Covenant of Good Faith and Fair Dealing**<br>6. **Civil Conspiracy**<br>7. **RICO Act**<br>8. **RICO Act (Nevada RICO)**<br>9. **Intentional Misrepresentation**<br>10. **Negligent Misrepresentation**<br>11. **Intentional Interference with Prospective Economic Advantage**<br>12. **Negligent Interference with Prospective Economic Advantage**<br><br><br>**DEMAND FOR JURY TRIAL** |

-1-

COMES NOW Leland T. Faegre, an individual, Theresa Faegre, an individual, and Leland T. Faegre and Theresa Faegre, as trustees of the ERISA Trust for the Milky Way Incorporated and 401(K) Profit Sharing Plan, (collectively "PLAINTIFFS,") in the above captioned case, by and through their attorney of record Charles R. Kozak, Esq., of Kozak & Associates, LLC., who allege, upon information and belief, as follows:

## JURISDICTION

1.      The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between Citizens of different states. [28 U.S. Code Section § 1332].

2.      Title 18 U.S.C. Section 1965(b) confers jurisdiction upon the district courts under the Racketeer Influenced and Corrupt Organizations Act ("RICO").

3.      This Court also has jurisdiction over the subject matter of these claims pursuant to 28 U.S.C. § 1331. In connection with the acts and omissions alleged in this complaint, DEFENDANTS, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, and interstate telephone communications.

4.      Title 29 U.S.C. Section 1132(a)(3) and (e)(1) in relevant parts confers exclusive jurisdiction upon the district courts, with exceptions not herein relevant, and allows a fiduciary to bring an action therein (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

5.      This Court also has supplemental jurisdiction under 28 U.S.C. §1367(a) over all other claims that are so related to claims in the action.

6.     This Court also has jurisdiction over the subject matter of these claims pursuant to 28 U.S.C. § 1331. In connection with the acts and omissions alleged in this complaint, DEFENDANTS, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, and interstate telephone communications.

**THE PARTIES**

7.     Plaintiff Leland T. Faegre ("L. FAEGRE") is a resident of Nevada, residing in the city of Stateline, Douglas County, Nevada.

8.     Plaintiff Theresa Faegre ("T. FAEGRE") is married to L. FAEGRE, and is also a resident of Nevada, residing in the city of Stateline, Douglas County, Nevada.

9.     Plaintiff L. Faegre is also a Trustee ("Trustee L. FAEGRE") of the trust qualified under 29 U.S.C. Section 501(a) for the Milky Way Incorporated and 401(K) Profit Sharing Plan (hereinafter collectively "TRUST").

10.    Plaintiff T. Faegre is also a Trustee ("Trustee T. FAEGRE") of the TRUST.

11.    Defendant Cindy Armentrout ("C. ARMENTROUT") is a Nevada licensed attorney, Bar No. 11511, and member of the Nevada Bar since October 22, 2009. ARMENTROUT is a resident of the city of Reno, Washoe County, Nevada, and doing business in Reno, Washoe County, Nevada.

12.    Defendant C. ARMENTROUT & ASSOCIATES, LTD. ("ARMENTROUT LTD") is an active Nevada professional LLC, doing business in Reno, Washoe County, Nevada which has as its single member ARMENTROUT.

13.    Defendants C. ARMENTROUT and ARMENTROUT LTD are collectively referred to as "ARMENTROUT."

14.     Defendant SHERRY GALLATIN ("S. GALLATIN") is a resident of Nevada, residing in Zephyr Cove, Douglas County, Nevada, at all times relevant.

15.     Defendant TOM GALLATIN ("T. GALLATIN") is a resident of Nevada, residing in Zephyr Cove, Douglas County, Nevada, at all times relevant.

16.     Defendant CASEY HOLDINGS I, LLC ("CASEYS") is a Nevada domestic limited-liability company, was created on August 22, 2010, has T. GALLATIN and S. GALLATIN as the managing partners, and has ARMENTROUT LTD listed as its Commercial Registered Agent.

17.     Defendant CASEY HOLDINGS I, LLC SERIES K ("CASEYS SERIES K") is an entity of unknown status, is not registered to do business in Nevada, and is wrongfully in possession of the premises currently called Casey's and previously called the Coyote Grill.

18.     S. GALLATIN, T. GALLATIN, and their entities, CASEYS and CASEYS SERIES K will be collectively as "GALLATINS."

19.     Upon information and belief, and therefore it is alleged that, DEFENDANTS, and each of them, without limiting the others, were and are the agents, servants, representatives, employees and/or co-conspirators of each of the other DEFENDANTS herein and were at all times acting within the course and scope of such agency, representation, employees and/or co-conspirators and with the permission and consent of each of said DEFENDANTS.

20.     PLAINTIFFS are informed and believe, and upon such information and belief allege, that DEFENDANTS, and each of them, were, at all times herein mentioned, acting in concert with each and every one of the remaining DEFENDANTS.

21.     Wherever appearing in this complaint, each and every reference to DEFENDANTS and to any of them is intended to be and shall be a reference to all DEFENDANTS hereto, and to each of them, unless said reference is otherwise specifically qualified.

22.     Plaintiffs do not know the true names, capacities, or basis for liability of Defendants sued herein as Does 1 through 50, inclusive, as each fictitiously named Defendant is in some manner liable to Plaintiffs, or claims some right, title, or interest in the Property. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained through discovery. Plaintiffs are informed and believe, and therefore allege that at all relevant times mentioned in this Complaint, each of the fictitiously named Defendants are responsible in some manner for the injuries and damages to Plaintiffs so alleged and that such injuries and damages were proximately caused by such Defendants, and each of them.

23.     Unless otherwise specifically plead, all statements are plead upon information and belief.

**<u>VENUE</u>**

24. Venue is proper because:

a.   ARMENTROUT is a resident of and regularly transacts business in this judicial district;

b.   ARMENTROUT LTD regularly transacts business in this judicial district;

c.   S. GALLATIN and T. GALLATIN are residents of this judicial district;

d.   CASEYS and CASEYS SERIES K regularly transact business in this judicial district;

e.   ROIC regularly transacts business in this judicial district; and

f.   ROIC ZEPHYR regularly transacts business in this judicial district.

///

///

## **FACTUAL ALLEGATIONS**

25.     PLAINTIFFS purchased a Restaurant, the COYOTE GRILL (the "Grill" or "Restaurant") from an individual named Mike Leeper (Mike Leeper is otherwise not involved in the current action).

26.     The Restaurant is located in a shopping center managed and owned by ROIC ZEPHYR in Zephyr Cove, Douglas County, Nevada.

27.     PLAINTIFFS determined that the RESTAURANT's future plans best required additional funds for expansion, to include a space for entertainment.

28.     T. GALLATIN thereafter became a customer of the RESTAURANT and repeatedly expressed his interest in making PLAINTIFFS' long-term plans for the RESTAURANT succeed.

29.     Due to the economic downturn, traditional funding sources, while preferable, were essentially nonexistent to PLAINTIFFS.

30.     On that basis, PLAINTIFFS entered in to a verbal agreement to borrow capital from GALLATINS and/or their wholly owned entities for the benefit of the RESTAURANT, owned by the PLAINTIFFS, by improvement and expansions.

31.     At the time of the financial agreements between PLAINTIFFS, the GALLATINS and their respective entities were represented by a Reno attorney, Defendant ARMENTROUT.

32.     T. GALLATIN suggested to PLAINTIFFS that attorney ARMENTROUT also handle the financial transactions between the GALLATINS, PLAINTIFFS, and their respective entities.

33.     ARMENTROUT also presented PLAINTIFFS in the creation of business entities, including a radio station, designed to market the RESTAURANT, On Top of a Cloud, LLC, which was created to own KTHO.

34.     ARMENTROUT breached her ethical duties to PLAINTIFFS by assisting GALLATIN in the negotiation of a $160,000.00 loan against PLAINTIFFS.

35.     ARMENTROUT breached her ethical duties to PLAINTIFFS by drafting NOTE AND SECURITY AGREEMENT in favor of GALLATIN and thereafter monitored and oversaw the repayment of said loan.

36.     Said loan by GALLATIN to PLAINTIFFS was a financial arrangement only, no business partnership or ownership interest was included in GALLATINS' agreement to provide funding to PLAINTIFFS.

37.      ARMENTROUT never advised PLAINTIFFS of any potential or actual conflicts of interest, nor did ARMENTROUT seek any written waiver of such.

38.     Thereafter, ARMENTROUT further represented PLAINTIFFS in the creation of additional business entities, such as a radio station, designed to market the RESTAURANT.

39.     In early 2014, PLAINTIFFS became concerned that statements from ROIC contained double billing, erroneous Common Area Maintenance ("CAM") and late charges.

40.     Additionally, PLAINTIFFS attempted unsuccessfully to work with ROIC to relocate a bus stop in front of the Restaurant that was interfering with outdoor dining.

41.     PLAINTIFFS contacted ARMENTROUT to review and scrutinize the ROIC invoices on PLAINTIFFS behalf and additionally to work out a solution to the bus stop location.

42.     Due to tensions on these issues, in spring of 2014, PLAINTIFFS began the process of considering alternate locations to move the RESTAURANT.

43.     Alternate locations considered were closer to the casino corridor and tourist traffic in Stateline, Nevada.

44.     PLAINTIFFS mentioned to GALLATIN their intention to move the RESTAURANT due to the opposition by ROIC, and additionally to be in a more desirable and profitable location.

45.     GALLATIN adamantly opposed PLAINTIFFS plan to move the RESTAURANT.

46.     GALLATIN'S opposition and resistance to loan PLAINTIFFS any further agreed-upon funds, if they proceeded with the move, prevented PLAINTIFFS from moving the RESTAURANT.

47.     By GALLATIN'S opposition and resistance to loan PLAINTIFFS, GALLATIN breached his agreement to loan PLAINTIFFS under the NOTE AND SECURITY AGREEMENT, dated July 9, 2012.

48.     Tensions between ROIC and PLAINTIFFS significantly increased when ARMENTROUT's review of ROIC's billing, revealed that the PLAINTIFFS had significantly overpaid ROIC.

49.     GALLATIN misrepresented to PLAINTIFFS that he would work to renegotiate the lease with ROIC on their behalf and insisted on them staying in the location, despite the opposition and over billing by ROIC.

50.     To compensate for the overbilling, on a few occasions PLAINTIFFS paid rent to RIOC inconsistently.

51.     Eventually in 2014, ROIC served an eviction notice on the GRILL.

52.     PLAINTIFFS retained Justin Townsend, Esq. ("TOWNSEND"), of Allison Mackenzie to co-represent them together with Defendant C. ARMENTROUT to argue against the

eviction at the summary eviction hearing in Minden District Court, where it was agreed that a settlement conference would take place in January 2015.

53.     In addition to Attorney TOWNSEND and L. FAEGRE, ARMENTROUT and T. GALLATIN were also present at the Settlement Conference.

54.     ARMENTROUT further breached her ethical duties to PLAINTIFFS by taking an adversarial position against the PLAINTIFFS by negotiating with ROIC at the SETTLEMENT CONFERENCE and assisting GALLATINS in a plan for GALLATIN to travel to negotiate the PLAINTIFFS' lease with ROIC.

55.     At the SETTLEMENT CONFERENCE it was, or had been previously, settled between ARMENTROUT and GALLATIN that:

    a.     a new lease would be negotiated on behalf of GALLATIN with ROIC;

    b.     GALLATIN would negotiate on behalf of himself;

    c.     Attorney TOWNSEND would be asked to prepare a LIMITED POWER OF ATTORNEY ("POWER OF ATTORNEY") so as to empower GALLATIN to negotiate on behalf of the PLAINTIFFS with ROIC.

    d.     Unknown to Attorney TOWNSEND and PLAINTIFFS, the idea of the POWER OF ATTORNEY was a ruse to enable GALLATIN to enable the takeover of the GRILL by GALLATIN, as further discussed, below.

56.     Accordingly, GALLATIN failed to renegotiate the lease on behalf of PLAINTIFFS, but instead worked out a negotiation by which GALLATIN could take over the lease with ROIC, because he intended to take over the RESTAURANT.

57.     On February 19, 2015, GALLATIN, ARMENTROUT, and an accountant showed up at the RESTAURANT and demanded an impromptu meeting with PLAINTIFFS.

58.      PLAINTIFFS meet with GALLATIN, ARMENTROUT and the accountant in the back area of the RESTAURANT where GALLATIN threatened that they would be evicted by ROIC by the end of the month.

59.      GALLATIN and ARMENTROUT represented to PLAINTIFFS since GALLATIN would provide no further funds under their agreement, they had no choice but to immediately sign over the RESTAURANT to GALLATIN or face eviction.

60.      ARMENTROUT presented an Offer to Purchase that she had prepared on behalf of and in support of GALLATIN taking the restaurant from PLAINTIFFS.

61.      The Offer to Purchase the RESTAURANT was under market value and in the approximate amount that PLAINTIFFS owed to GALLATIN.

62.      Faced with the withdraw of their agreed upon funding, and with representation by ARMENTROUT and the accountant that they had no choice, PLAINTIFFS signed over the RESTAURANT to GALLATIN.

63.      ARMENTROUT, herself, notarized the Offer to Purchase.

64.      In this way, GALLATINS then sought to and did wrest control of the RESTAURANT from PLAINTIFFS, all with the aid of Attorney ARMENTROUT, in breach of fiduciary duty and contractual promises, at best, and through criminal conspiracies at worst.

65.      Today, the GALLATINS continues to operate the RESTAURANT, but have changed the name to "CASEYS."

## FIRST CAUSE OF ACTION

### BREACH OF CONTRACT
### (Allegations specific to ARMENTROUT)

66.      PLAINTIFFS incorporate by this reference all prior the above paragraphs numbered 1 through 65 inclusive, as though fully set forth herein.

67.     PLAINTIFFS and ARMENTROUT were parties to a contract for professional services.

68.     The terms of the contract consisted, among other things, to advise PLAINTIFFS ethically, to represent PLAINTIFFS ethically as an attorney pursuant to the Nevada Rules of Professional Conduct ("NRPC").

69.     The NRCP provides that an attorney may not concurrently represent two or more clients:

      a.     A concurrent conflict of interest.  NRPC §§ 1.7(a)(1) and 1.8.

      b.     A significant risk that representation will be materially limited by the lawyer's responsibilities to another client or former client or third person or the personal interest of the lawyer ("potential conflict").  NRPC § 1.7(a)(2).

      c.     Certain conflicts can be waived by a client if the client gives informed consent confirmed in writing.  NRPC § 1.7(b).

69.     NRPC 1.7(a)(1) further provides that:  A lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if the representation of one client will be directly averse to another client.

70.     Not only did such action violate NRPC 1.7(a)(1), but it also violated NRCP 1.8(b), which provides as follows: a lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client gives informed consent.

71.     ARMENTROUT represented GALLATIN and their business entities and PLAINTIFFS and their business entities regarding the RESTAURANT.

72.     ARMENTROUT represented PLAINTIFFS in the creation of business entities, including a radio station, designed to market the RESTAURANT, On Top of a Cloud, LLC, which was created to own KTHO.

73.     ARMENTROUT breached her contract to provide ethical professional

-11-

representation to PLAINTIFFS by assisting GALLATIN in the negotiation of a $160,000.00 loan to PLAINTIFFS without any of the required ethical advice of conflict of interests.

74.      ARMENTROUT further breached her ethical duties to PLAINTIFFS by taking an adversarial position against the PLAINTIFFS by assisting GALLATIN in the drafting a promissory note memorializing the loan, after the fact, the "NOTE AND SECURITY AGREEMENT", dated July 9, 2012, ("NOTE") which documented the $160,000.00 Loan without any of the required ethical advice of conflict of interests.

75.      ARMENTROUT further breached her contract to provide ethical professional duties by taking an adversarial position against the PLAINTIFFS by assisting GALLATIN by participating in the accounting on the NOTE on behalf of GALLATIN without any of the required ethical advice of conflict of interests.

76.  ARMENTROUT further breached her ethical duties to PLAINTIFFS by taking an adversarial position against the PLAINTIFFS by negotiating with PLAINTIFFS and GALLATIN in the future course of the GRILL with the unstated intent to aid GALLATIN in taking the GRILL away from the PLAINTIFFS, thus violating each of NRPC 1.7(a)(1), NRPC 1.8(b), NRPC 1.9(a), and NRPC 1.9(c).

77.      Due to the breaches of contract by ARMENTROUT, and each of them, PLAINTIFFS, and each of them, suffered economic losses and damages.

78.      As a direct result of ARMENTROUT breach and breaches of PLAINTIFFS, and each of them, suffered foreseeable immediate and consequential damages in such amounts as are fair and reasonable, plus costs and such further relief as the court deems just and proper.

79.      WHEREFORE, PLAINTIFFS demand judgment against ARMENTROUT for money damages in such amounts as are fair and reasonable for breach of contract, plus costs and

such further relief as the court deems just and proper.

## SECOND CAUSE OF ACTION

### BREACH OF CONTRACT
### (Allegations specific to GALLATIN)

80.     PLAINTIFFS incorporate by this reference all prior the above paragraphs numbered 1 through 79 inclusive, as though fully set forth herein.

81.     PLAINTIFFS and GALLATIN entered into the NOTE AND SECURITY AGREEMENT, dated July 9, 2012 which constitutes a written contract.

82.     PLAINTIFFS have fully performed under the Contract all acts required of PLAINTIFFS as of the date of this filing.

83.     GALLATIN unjustifiably failed to perform and has thereby breached the contract.

84.     GALLATIN'S opposition and resistance to loan PLAINTIFFS any further agreed-upon funds if they proceeded with the move, prevented PLAINTIFFS from moving the RESTAURANT.

85.     By GALLATIN'S opposition and resistance to loan PLAINTIFFS, GALLATIN breached his agreement to loan PLAINTIFFS under the NOTE AND SECURITY AGREEMENT, dated July 9, 2012.

86.     GALLATIN has refused to allow PLAINTIFFS to materially participate in the Business and has diverted the income of the Business to a secret account of DEFENDANTS and has taken assets of the Business from PLAINTIFFS.

87.     As a direct result of ARMENTROUT breach and breaches of PLAINTIFFS and each of them, suffered foreseeable immediate and consequential damages in such amounts as are fair and reasonable, plus costs and such further relief as the court deems just and proper.

88.     As a proximate result of the actions of GALLATIN, PLAINTIFFS have been damaged in an amount to be proven at time of trial, which sum is in excess of the jurisdictional amount of this Court.

## THIRD CAUSE OF ACTION

### BREACH OF FIDUCIARY DUTY
### (Allegations specific to ARMENTROUT)

89.     PLAINTIFFS incorporate by this reference all prior the above paragraphs numbered 1 through 88 inclusive, as though fully set forth herein.

90.     As legal counsel for PLAINTIFFS, and each of them, ARMENTROUT, and each of them, owed to PLAINTIFFS duties of loyalty and were prohibited from placing the interests of ARMENTROUT ahead of the interests of PLAINTIFFS, or any of them.

91.     As legal counsel for PLAINTIFFS, and each of them, ARMENTROUT, and each of them, owed to PLAINTIFFS duties of loyalty and were prohibited from placing the interests of any third-party ahead of the interests of PLAINTIFFS, or any of them.

92.     ARMENTROUT, and each of them, acted in their own self-interest by failing to follow the required ethics, both in advising PLAINTIFFS, and each of them, and in representing PLAINTIFFS, and each of them, with third-parties.

93.     As a result of ARMENTROUT'S breach and breaches of fiduciary duties, PLAINTIFFS, and each of them, suffered economic losses and damages.

94.     As a direct result of ARMENTROUT'S breach and breaches of fiduciary duty, PLAINTIFFS, and each of them, suffered foreseeable immediate and consequential damages in such amounts as are fair and reasonable, plus costs and such further relief as the court deems just and proper.

95.     WHEREFORE, PLAINTIFFS, and each of them, demand judgment against ARMENTROUT for money damages in such amounts as are fair and reasonable for breach of fiduciary duties, plus costs and such further relief as the court deems just and proper.

96.     ARMENTROUT'S actions, and each of them, were wanton, willful, and intentional, justifying an award of punitive damages to deter others from similar conduct in the future.

## FOURTH CAUSE OF ACTION

### BREACH OF FIDUCIARY DUTY
### (Allegations specific to GALLATIN)

97.     PLAINTIFFS incorporate by this reference all prior the above paragraphs numbered 1 through 96 inclusive, as though fully set forth herein.

98.     PLAINTIFFS gave GALLATIN a Power of Attorney to negotiate on their behalf and in their best interest with ROIC.

99.     By the Power of Attorney, GALLATIN owed to PLAINTIFFS duties of loyalty and were prohibited from placing the interests of GALLATIN ahead of the interests of PLAINTIFFS, or any of them.

100.    By the Power of Attorney, GALLATIN owed to PLAINTIFFS a duty of loyalty and was prohibited from placing the interests of any third-party ahead of the interests of PLAINTIFFS, or any of them.

101.    GALLATIN acted in his own self-interest by failing to negotiate on PLAINTIFFS' behalf and in their best interest with ROIC, by negotiating instead a plan for his takeover of the lease agreement with ROIC for the RESTAURANT property.

102.    As a result of GALLATIN'S breach and breaches of fiduciary duties, PLAINTIFFS, and each of them, suffered economic losses and damages.

103.    As a direct result of GALLATIN'S breach and breaches of fiduciary duty PLAINTIFFS, and each of them, suffered foreseeable immediate and consequential damages in such amounts as are fair and reasonable, plus costs and such further relief as the court deems

just and proper.

104.     WHEREFORE, PLAINTIFFS, and each of them, demand judgment against GALLATIN for money damages in such amounts as are fair and reasonable for breach of fiduciary duties, plus costs and such further relief as the court deems just and proper.

105.     GALLATIN'S actions, and each of them, were wanton, willful, and intentional, justifying an award of punitive damages to deter others from similar conduct in the future.

**(Causes of Action against ALL DEFENDANTS)**

**<u>FIFTH CAUSE OF ACTION</u>**

**COVENANT OF GOOD FAITH AND FAIR DEALING**

106.     PLAINTIFFS incorporate by this reference all prior the above paragraphs numbered 1 through 105 inclusive, as though fully set forth herein.

107.     In every contract there is implied by law a covenant of good faith and fair dealing, by which each party to a contract is beholden to take such further acts as are necessary to be taken in good faith to carry out the intent of the parties.

108.     Implied into the contracts between PLAINTIFFS and the DEFENDANTS is the implied promise that the LAW DEFENDANTS would act in good faith and fair dealing with PLAINTIFFS.  The covenant imposes on the DEFENDANTS the duty to refrain from doing anything which by any act of his own would render performance of the contract impossible.

109.     ARMENTROUT has breached the covenant of good faith and fair dealing by, among other things:

a.     failing to act according to the ethical norms required by the Nevada State Bar, including but not limited to failing in the duty of loyalty,

b.     failing in the duty to act with professional competence, exclusive of skill and knowledge,

c.       failing to act with the requisite required skill and knowledge,

d.       failing to act with the required fiduciary standards, and

e.       such other failings as may be shown by discovery conducted in this action.

110.     GALLATIN has breached the covenant of good faith and fair dealing by among other things:

a.       unjustifiably failing to perform, and has thereby breached the contract, and

b.       breaching the agreement to loan PLAINTIFFS under the NOTE AND SECURITY AGREEMENT, dated July 9, 2012.

111.     PLAINTIFFS, and each of them, demand judgment against DEFENDANTS for money damages in such amounts as are fair and reasonable for breach of the covenant of good faith and fair dealing, plus costs and such further relief as the court deems just and proper.

## SIXTH CAUSE OF ACTION

## CIVIL CONSPIRACY

112.     Paragraphs 1 to 111 inclusive are incorporated as though fully set forth herein.

113.     To state an actionable claim for civil conspiracy to defraud, a plaintiff must allege: (1) a conspiracy agreement formed by the defendants to unlawfully harm the plaintiff, (2) an act of fraud in furtherance thereof, and (3) resulting damages to the plaintiff.

114.     A conspiracy may be "inferred from the nature of the acts done, the relation of the parties, the interests of the alleged conspirators, and other circumstances.

115.     The DEFENDANTS, and each of them, agreed and conspired that it would be in each of their economic interests if the ownership of the GRILL was severed from the PLAINTIFFS, and each of them, and transferred to Defendants GALLATIN.

116.     To that end, among other acts:

a.     The judicial process was abused through a fraudulent and/or collusive or otherwise wrongful takeover of the RESTAURANT;

b.     It was contrived between ARMENTROUT and GALLATIN that GALLATIN would be given the Power of Attorney by PLAINTIFFS, or some of them, to negotiate with ROIC;

c.     GALLATIN breached his fiduciary duty concerning the Power of Attorney by failing to negotiate with ROIC in good faith and pursuant to his duty of loyalty to PLAINTIFFS;

d.     In conspiracy with GALLATIN, ARMENTROUT drafted the Power of Attorney and Offer to Purchase to facilitate GALLATIN'S takeover of the RESTAURANT;

e.     In conspiracy with GALLATIN, ARMENTROUT met with GALLATIN and PLAINTIFFS in violation of her ethical duties, and asserted her influence as attorney to coerce PLAINTIFFS to sign the Offer to Purchase to facilitate GALLATIN'S takeover of the RESTAURANT;

f.     GALLATIN and ARMENTROUT utilized extortion, menace, duress, and/or coercion to force the PLAINTIFFS to execute the Offer to Purchase.

117.     By their actions, DEFENDANTS, and each of them, have harmed PLAINTIFFS, and each of them, in amounts to be proven at time of trial, which sums are in excess of the jurisdictional amount of this Court, and which includes compensatory damages, punitive damages, attorneys' fees, and such further relief as the court deems just and proper.

## SEVENTH CAUSE OF ACTION

## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS (RICO) ACT

118.     Paragraphs 1 to 117 inclusive are incorporated as though fully set forth herein.

119.     Title 18 United States Code Sections 1961 to 1968 make it unlawful for a person to manipulate an enterprise to defraud another.

120.     The DEFENDANTS, and each of them, have profited from a scheme or enterprise whereby the DEFENDANTS:

a.     Utilized such scheme and/or enterprise to defraud PLAINTIFFS, by use of
     i.     interstate mail, and/or

ii.     interstate wire,

b.     In furtherance of their conspiracy to defraud PLAINTIFFS of property and other damages,

c.     By utilizing an enterprise, the CONSPIRACY,

d.     To wrongfully deprive the PLAINTIFFS, and each of them,
     i.     of the BUSINESS and/or the GRILL, and
     ii.     its future profits,

e.     In breach of the fiduciary duties of:
     i.     Defendant ARMENTROUT, and
     ii.     Defendant T. GALLATIN,

f.     By the provision of fraudulent legal advice by ARMENTROUT,

g.     And by other acts in violation of their duties of loyalty and professional and ethical conduct to PLANTIFFS,

h.     As well as by as other criminal acts by DEFENDANTS, and each of them,

i.     By utilizing extortion, menace, duress, and/or coercion and other crimes by GALLATIN.

121.     By their actions, DEFENDANTS, and each of them, have harmed PLAINTIFFS, and each of them, in amounts to be proven at time of trial, which sums are in excess of the jurisdictional amount of this Court, and which includes compensatory damages, punitive damages, attorneys' fees, and such further relief as the court deems just and proper.

## EIGHTH CAUSE OF ACTION

### RACKETEERING ACTIVITY (NEVADA RICO)

122.     Paragraphs 1 to 121 inclusive are incorporated as though fully set forth herein.

123.     NRS 207.400 prohibits "Racketeering activity," as defined by NRS 207.380, and makes it unlawful for a person to manipulate an enterprise in such a way that the use of the enterprise, such as is the case here, have used the CONSPIRACY, to deprive another of property through Racketeering Activity.

124.     DEFENDANTS, and each of them, have profited through Racketeering Activity through an enterprise whereby the DEFENDANTS:

    a.     Utilized such scheme and/or enterprise to defraud PLAINTIFFS, by use of
        i.     interstate mail, and/or
        ii.     interstate wire,

    b.     In furtherance of their conspiracy to defraud PLAINTIFFS of property and other damages,

    c.     By utilizing an enterprise, the CONSPIRACY,

    d.     To wrongfully deprive the PLAINTIFFS, and each of them, of the BUSINESS and/or the GRILL and its future profits,

    e.     In breach of the fiduciary duties of:
        i.     Defendant ARMENTROUT, and
        ii.     Defendant GALLATIN,
        iii.     and each of them,

    f.     By the provision of fraudulent legal advice by ARMENTROUT, and

    g.     By other acts in violation of their duties of loyalty and professional and ethical conduct to PLAINTIFFS,

    h.     As well as by as other criminal acts by DEFENDANTS, and each of them
        i.     By utilizing extortion, menace, duress, and/or coercion and other crimes by DEFENDANTS.

125.     By their actions, DEFENDANTS, and each of them, have harmed PLAINTIFFS, and each of them, in amounts to be proven at time of trial, which sums are in excess of the jurisdictional amount of this Court, and which includes compensatory damages, punitive damages, attorneys' fees, and such further relief as the court deems just and proper.

## NINTH CAUSE OF ACTION

### INTENTIONAL MISREPRESENTATION

126.     Paragraphs 1 to 125 inclusive are incorporated as though fully set forth herein.

127.     DEFENDANTS made false representations that harmed PLAINTIFFS as follows:

        a.      DEFENDANTS represented to PLAINTIFFS that a GALLATIN would negotiate with ROIC on PLAINTIFFS' behalf and in PLAINTIFFS' best interest;

        b.      DEFENDANTS' representation was false because GALLATIN intended to take over the RESTAURANT with the legal assistance of ARMENTROUT.

128.     DEFENDANTS knew that the representation was false when they made it, or DEFENDANTS made the representation recklessly and without regard for its truth.

129.     DEFENDANTS intended that PLAINTIFFS would rely on the representation.

130.     PLAINTIFFS reasonably relied on DEFENDANTS' representation.

131.     PLAINTIFFS were harmed by the loss of the RESAURANT, its assets, value, and revenue.

132.     PLAINTIFFS reliance on DEFENDANTS' representation was a substantial factor in causing PLAINTIFFS' harm.

133.     By their actions, DEFENDANTS, and each of them, have harmed PLAINTIFFS, and each of them, in amounts to be proven at time of trial, which sums are in excess of the jurisdictional amount of this Court, and which includes compensatory damages, punitive damages, attorneys' fees, and such further relief as the court deems just and proper.

## TENTH CAUSE OF ACTION

### NEGLIGENT MISREPRESENTATION

134.     Paragraphs 1 to 133 inclusive are incorporated as though fully set forth herein.

135.     DEFENDANTS negligently misrepresented facts that harmed PLAINTIFFS as follows:

        a.      DEFENDANTS represented to PLAINTIFFS that a GALLATIN would negotiate with ROIC on PLAINTIFFS' behalf and in PLAINTIFFS' best interest;

        b.      DEFENDANTS' representation was false because GALLATIN intended to take over the RESTAURANT with the legal assistance of ARMENTROUT.

136.     DEFENDANTS represented to PLAINTIFFS that these facts were true, although the representation was not true.

137.     Although DEFENDANTS may have honestly believed that the representations were true, DEFENDANTS had no reasonable grounds for believing the representation was true.

138.     DEFENDANTS intended that PLAINTIFFS would rely on the representation.

139.     PLAINTIFFS reasonably relied on DEFENDANTS' representation.

140.     PLAINTIFFS were harmed by the loss of the RESAURANT, its assets, value, and revenue.

141.     PLAINTIFFS reliance on DEFENDANTS' representation was a substantial factor in causing PLAINTIFFS' harm.

142.     By their actions, DEFENDANTS, and each of them, have harmed PLAINTIFFS, and each of them, in amounts to be proven at time of trial, which sums are in excess of the jurisdictional amount of this Court, and which includes compensatory damages, punitive damages, and attorneys' fees and such further relief as the court deems just and proper.

## ELEVENTH CAUSE OF ACTION

## INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

143.     Paragraphs 1 to 142 inclusive are incorporated as though fully set forth herein.

144.     PLAINTIFFS had an existing business relationship with GALLATIN with the probability of future economic benefit.

145.     The DEFENDANTS, and each of them, have engaged in a course of action that has been injurious to such relationship including (despite an attorney-client relationship between PLAINTIFFS and ARMENTROUT, and a fiduciary relationship between PLAINTIFFS and GALLATIN) by conspiring with each other Defendant:

a.      On how to exclude PLAINTIFFS from the RESTAURANT;

b.      On how to divert assets of the RESTAURANT away from PLAINTIFFS;

c.      On how to remove PLAINTIFFS from the premises of the RESTAURANT;

d.      On how to negotiate against PLAINTIFFS, all including by obtaining confidential attorney-client information of PLAINTIFFS in order to discuss it among the DEFENDANTS;

e.      By utilizing extortion, menace, duress, and/or coercion to force PLAINTIFFS to execute the OFFER TO PURCHASE;

f.      By preventing PLAINTIFFS from entering into other, more lucrative potential leases at other locations;

g.      By engaging in slander against PLAINTIFFS, and each of them;

h.      By engaging in slander per se against PLAINTIFFS, and each of them;

i.      By engaging in libel against PLAINTIFFS, and each of them; and

j.      By creating disharmony between PLAINTIFFS and DEFENDANTS, and each of them.

146.    DEFENDANTS' actions, and the actions of each of them, have interfered with such relationship between PLAINTIFFS and the Business and each of the DEFENDANTS.

147.    By their actions, DEFENDANTS, and each of them, have harmed PLAINTIFFS, and each of them, in amounts to be proven at time of trial, which sums are in excess of the jurisdictional amount of this Court, and which includes compensatory damages and such further relief as the court deems just and proper.

## **TWELFTH CAUSE OF ACTION**

### **NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

148.    Paragraphs 1 to 147 inclusive are incorporated as though fully set forth herein.

149.    PLAINTIFFS had an existing business relationship with GALLATIN with the probability of future economic benefit.

150.     The DEFENDANTS, and each of them, have negligently engaged in a course of action that has been injurious to such relationship including (despite an attorney-client relationship between PLAINTIFFS and ARMENTROUT, and a fiduciary relationship between PLAINTIFFS and GALLATIN) by conspiring with each other Defendant:

      a.     On how to exclude PLAINTIFFS from the RESTAURANT;

      b.     On how to divert assets of the RESTAURANT away from PLAINTIFFS;

      c.     On how to remove PLAINTIFFS from the premises of the RESTAURANT;

      d.     On how to negotiate against PLAINTIFFS, all including by obtaining confidential attorney-client information of PLAINTIFFS in order to discuss it among the DEFENDANTS;

      e.     By utilizing extortion, menace, duress, and/or coercion to force PLAINTIFFS to execute the OFFER TO PURCHASE;

      f.     By preventing PLAINTIFFS from entering into other, more lucrative potential leases at other locations;

      g.     By engaging in slander against PLAINTIFFS, and each of them;

      h.     By engaging in slander per se against PLAINTIFFS, and each of them;

      i.     By engaging in libel against PLAINTIFFS, and each of them; and

      j.     By creating disharmony between PLAINTIFFS and DEFENDANTS, and each of them.

151.     DEFENDANTS' actions, and the actions of each of them, negligently have interfered with such relationship between PLAINTIFFS and the Business and each of the DEFENDANTS.

152.     By their actions, DEFENDANTS, and each of them, negligently have harmed PLAINTIFFS, and each of them, in amounts to be proven at time of trial, which sums are in excess of the jurisdictional amount of this Court, and which includes compensatory damages and such further relief as the court deems just and proper.

153.     Further, PLAINTIFFS believe that Defendant T. GALLATIN acted intentionally, with malice and in conscious disregard of PLAINTIFFS' rights and PLAINTIFFS' resulting damages.

154.     As a result, PLAINTIFFS are also entitled to the award of punitive and exemplary damages against Defendant T. GALLATIN, in an amount according to proof.

## **PRAYER**

WHEREFORE, PLAINTIFFS pray as follows with regard to each of the above causes of action which may be asserted by the one or more of the various PLAINTIFFS:

AS TO ALL CAUSES OF ACTION:

1.   For general, specific, exemplary and punitive damages according to proof at time of trial;

2.   For attorneys' fees and costs according to proof;

3.   For interest as allowed by law;

4.   For cost of suit herein; and

5.   For such other and further relief as the court deems just.

Dated: February 12, 2018                    KOZAK & ASSOCIATES, LLC.

/s/ Charles R. Kozak, Esq.
Charles R. Kozak
*Attorney for Plaintiffs*